IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAMBETH MAGNETIC STRUCTURES, )
LLC                           )
                              )
           Plaintiff,         )   Civil Action No. 14-1526
                              )
       v.                     )   Judge Cathy Bissoon
                              )
TOSHIBA CORPORATION, *et.al.*, )
                              )
           Defendants.        )

**MEMORANDUM & ORDER**

For the reasons that follow, Defendants Headway Technologies, Inc., SAE Magnetics H.K. Ltd. and TDK Corporation's Motions to Dismiss (Docs. 103 and 127) will be GRANTED.

**I. MEMORANDUM**

**Background**

Lambeth Magnetic Structures, LLC, ("Plaintiff" or "Lambeth"), an entity created to license patents invented by Dr. David N. Lambeth, a retired Carnegie Mellon professor, is the current owner of U.S. Design Patent No. 7,128,988 ("the '988 patent"), entitled "Magnetic Material Structures, Devices and Methods." (Third Am.Compl. (Doc. 82) at ¶¶ 23-24). Plaintiff alleges that "[i]n connection with the '988 patent, Dr. Lambeth invented a new magnetic structure for Hard Disk Drive Devices comprised of the following elements: a substrate; at least one bcc-d layer which is magnetic, forming a uniaxial symmetry broken structure; and at least one layer providing a (111) textured hexagonal atomic template disposed between said substrate and said bcc-d layer" and that "[i]ndependent claims 1 and 27 of the '988 patent claim a

1

magnetic material and a magnetic device, respectively, comprising the [referenced] structure." (Id. at ¶¶ 31-32).

On November 14, 2016, Plaintiff instituted this patent infringement action against Toshiba Corporation. (Compl. (Doc. 1)). Plaintiff alleges that many of Toshiba Corporation's hard disk drives ("HDDs") incorporate the magnetic structure described in the '988 patent and thus infringe on at least claims 1 and 27. (Id. at ¶¶ 36-37). Plaintiff thrice amended its complaint, filing the currently-operative Third Amended Complaint on June 24, 2016. (Doc. 82). With the Third Amended Complaint, Plaintiff added, *inter alia*, Defendants SAE Magnetics H.K. Ltd. ("SAE"), Headway Technologies, Inc. ("Headway") and TDK Corporation ("TDK"). (Id.) Defendants SAE, Headway and TDK ("the moving Defendants") all move to dismiss the Third Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). See (Docs. 103 and 107).

**Jurisdictional Facts**[1]

Defendant Headway is a California corporation with its sole business location in California. Headway designs and manufactures wafer chips for use in recording heads used in hard disk drives. (Chen Decl. (Doc. 104-1) at ¶¶ 3, 4, 10). Headway supplies its wafer chips to Defendant SAE in Hong Kong – and nowhere else. (Id. at ¶¶ 4, 10). SAE incorporates Headway's wafer chips into head gimbal assemblies ("HGAs"). SAE sells the head gimbal assemblies in Hong Kong and China. The head gimbal assemblies are subsequently incorporated into hard disk drive products by companies such as Defendant Toshiba Corporation. Headway "designs and optimizes recording heads specifically for [Defendant] Toshiba products." (Doc. 119 at 9; Docs. 119-1-119-8). Headway denies making, using, offering for sale or selling wafer

---

[1] The Court of Appeals for the Federal Circuit has held that when a court bases its personal jurisdiction analysis:

> on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden. Elecs. for Imaging v. Coyle, 340 F.3d 1344, 1349 (Fed.Cir. 2003). On the other hand, [the court has] explained that the preponderance standard applies where the parties conduct jurisdictional discovery but no jurisdictional hearing was necessary because the parties indicated to the district court that the jurisdictional facts were not in dispute. Pieczenik v. Dyax Corp., 265 F.3d 1329, 1334 (Fed.Cir.2001).

Celgard, LLC v. SK Innovation Co., Ltd., 792 F.3d 1373, 1378 (Fed.Cir. 2015).

Here, no jurisdictional hearing was conducted. Yet, Plaintiff engaged in non-jurisdictional discovery with the Toshiba Defendants prior to filing the Third Amended Complaint. That exchange of information provided documents that led Plaintiff to file the Third Amended Complaint. Thus, it is not entirely accurate that no jurisdictional discovery has been conducted, as Plaintiff has relied on the information it obtained from the Toshiba Defendants in making its jurisdictional arguments as to the moving Defendants. Without clear guidance as to what standard should apply in this unique scenario, the Court, in an abundance of caution, opts to apply the more lenient prima facie standard. The Court notes that it does not appear that any of the jurisdictional facts are in dispute, though no party has explicitly stated the same. Regardless of the specific factual burden of proof, the dispositive personal jurisdiction conclusion the Court reaches *infra* remains the same.

chips to customers located in Pennsylvania, either directly or through distributors or retailers. (Doc 104-1 at ¶ 16). Headway contends it does not know whether any of its wafer chips have ever reached Pennsylvania as a component of a third party product. (Id. at ¶ 17). Headway claims it has no expectation that its wafer chips, as stand-alone chips or as components of third party products, would be sold to consumers in Pennsylvania. (Id. at ¶ 18). Plaintiffs have provided evidence that Toshiba hard disk drives incorporating Headway components are offered for sale in Pennsylvania. (Docs. 119 at 12, 119-15, 119-16, 119-17 at ¶¶ 2-5).

TDK is a Japanese corporation with its principal place of business in Tokyo, Japan. (Nagata Decl. (Doc. 128-1) at ¶ 3). TDK has no place of business, office or other location in the United States. (Id. at ¶ 4). TDK subsidiary Headway is its only subsidiary with any U.S. connection. (Id.) "TDK does not exercise control over when, where or to whom Headway sells or ships its wafer chips." (Id.) TDK manufactures a variety of items, including wafer chips used in hard drives. (Id. at ¶ 5). TDK sells its wafer chips to SAE, a TDK subsidiary. (Id.) SAE incorporates them into head gimbal assemblies. (Id.) SAE sells its head gimbal assemblies to third parties in Asia for commercial production of hard disk drives. (Id. at ¶ 6). "TDK does not control, participate in, track or monitor the further sale of its wafer chips after they are incorporated into HGAs and sold by SAE to SAE's customers." (Id. at ¶ 11). TDK claims no actual knowledge or information that any of its wafer chips has reached Pennsylvania as a component of a third party product. (Id. at ¶ 19). TDK has never had a distributor for Pennsylvania, or otherwise had an established distribution channel for bringing its wafer chips to Pennsylvania. (Id. at ¶ 20).

SAE is a Hong Kong corporation, with its principal place of business in Hong Kong. (Han Decl. (Doc. 128-2) at ¶ 3). SAE manufactures head gimbal assemblies. (Id. at ¶ 5). SAE

purchases wafer chips from Headway and TDK for integration into head gimbal assemblies. (Id.) SAE sells the head gimbal assemblies to customers who incorporate them into hard disk drives. (Id. at ¶ 6). In some cases, SAE acts as a contractor for the customer and incorporates the head gimbal assemblies into the hard drives. (Id.) When acting as a contractor, all of the head gimbal assemblies are owned by the customer and SAE merely performs contract manufacturing/assembly services at its manufacturing facility in Dongguan, China. (Id.) SAE sells to Toshiba Corporation hard disk drives that it manufactures that incorporate Headway wafer chips. (Id. at ¶ 7). SAE ships the finished hard disk drives to locations globally, as directed by Toshiba. (Id.) None of the shipment locations are in Pennsylvania. (Id.) SAE has no role or control over any sales or shipments of hard disk drives subsequent to its initial supply shipment. (Id. at ¶ 8). SAE's distribution channel for HGAs that incorporate Headway or TDK wafer chips, as components for commercial production of HDDs, ends with HGA shipments in Asia to SAE's customers. (Id. at ¶ 9). SAE's distribution channel for HDDs that incorporate Headway wafer chips ends with SAE's shipments to locations designated by Toshiba, with the majority of the shipments to Asia, and none of them to Pennsylvania. (Id.) SAE has not made, used, offered for sale, or sold an HGA or HDD to a customer located in Pennsylvania, either directly or through distributors or retailers. (Id. at ¶ 17). SAE has no actual knowledge or information that any of its HGAs or HDDs has ever reached Pennsylvania as a component of a third party product. (Id. at ¶ 18). SAE does not have a distributor for Pennsylvania, or otherwise have an established distribution channel for bringing SAE's HGAs or HDDs to Pennsylvania. (Id. at ¶ 19).

      Plaintiff argues SAE, TDK and Headway's manufactured component parts are critical to Toshiba's finished hard disk drive devices. (Doc. 119 at 8).

## Analysis

Federal Circuit law governs questions of personal jurisdiction over claims of patent infringement. Autogenomics, Inc. v. Oxford Gene Technology, Ltd., 566 F.3d 1012, 1016 (Fed.Cir. 2009) ("[T]he jurisdictional issue is intimately involved with the substance of patent law."). There are two types of personal jurisdiction – general and specific. Plaintiff does not contend any moving Defendant is subject to general jurisdiction. Thus, the question turns on whether the Court has specific jurisdiction over any of the non-resident moving Defendants.

A determination as to whether a defendant is subject to specific personal jurisdiction involves two questions: "first, whether the forum state's long arm statue permits service of process and, second, whether the assertion of jurisdiction is consistent with the due process clause." Celgard LLC v. SK Innovation Co., Ltd., 792 F.3d 1373, 1377 (Fed.Cir. 2015) (internal citations omitted). Pennsylvania's long-arm statute provides for jurisdiction "to the fullest extent" permitted under the Due Process Clause of the Fourteenth Amendment, 42 Pa. Cons. Stat. § 5322(b), thus merging the two inquiries into one, i.e., whether the exercise of personal jurisdiction comports with due process.

Due process requires that a defendant have sufficient "minimum contacts with the [forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted). To determine whether the due process requirement for specific personal jurisdiction is met the Court considers:

> (1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair. Grober v. Mako Products, Inc., 686 F.3d 1335, 1346 (Fed.Cir. 2012) (quoting Elecs. for Imaging Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed.Cir. 2003)). The plaintiff bears the burden of affirmatively establishing the first two elements of the due process

requirement. Elecs. for Imaging, 340 F.3d at 1350.  If the plaintiff meets its burden, the burden shifts to the defendant to prove that personal jurisdiction is unreasonable.  Id. "The first two factors correspond with the 'minimum contacts' prong" of International Shoe, "and the third factor corresponds with the 'fair play and substantial justice' prong." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed.Cir.2001).

Celgard, 792 F.3d at 1377-78.

Plaintiff advances two distinct theories of specific personal jurisdiction.  First, Plaintiff argues a "stream of commerce" jurisdictional theory, relying on Toshiba's incorporation of the moving Defendants' components into hard disk drive devices that are sold nationwide, including in the Western District of Pennsylvania.  (Doc. 119 at 17; Doc. 149 at 15).  Second, Plaintiff argues that the moving Defendants' relationship and contract with Carnegie Mellon University's Data Storage Systems (an entity located in the Western District of Pennsylvania) to fund research into technologies that will be incorporated into infringing instrumentalities and sold in the Western District of Pennsylvania subjects the moving Defendants to personal jurisdiction.  (Doc. 119 at 23; Doc. 149 at 23).  Plaintiff additionally argues as to TDK and SAE that this Court should exercise jurisdiction pursuant to the Federal long-arm statute.  (Doc. 149 at 28).

"The Supreme Court has yet to reach a consensus on the proper articulation of the stream-of-commerce theory." AFTG-TG LLC, v. Nuvoton Tech. Corp., 689 F.3d 1358, 1362 (Fed.Cir. 2012); see also Polar Electro Oy v. Suunto Oy, 829 F.3d 1343, 1349 (Fed.Cir. 2016). What remains unanswered is "whether mere placement into the stream of commerce is sufficient to establish jurisdiction, or whether intent that the products reach the forum is required." Celgard LLC v. SK Innovation Co. Ltd., at 1381 (summarizing the plurality and differing opinions in Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102 (1987)).  In Asahi, Justice O'Connor, joined by three justices, "opined that mere foreseeability or awareness is insufficient, and that there must be some additional conduct of the

7

defendant purposefully directed toward the forum state," whereas Justice Brennan, joined by three other justices, concluded that "mere foreseeability or awareness of the defendant that its product would wind up in the forum state is sufficient." Polar Electro Oy, 829 F.3d at 1348-49 (summarizing the competing opinions in Asahi).

The Court of Appeals for the Federal Circuit has yet to take a position as to which Asahi theory should govern its stream of commerce analysis, finding with each fact pattern it analyzes that the result would be the same under either theory and obviating the need to reach a conclusion. See, e.g., Polar Electro Oy, 829 F.3d at 1350 ("The record shows that [Defendant's] actions satisfy the more stringent tests articulated by Justice O'Connor in Asahi and by Justice Kennedy in McIntyre, as well as the more flexible test by Justice Brennan."); Celgard, 792 F.3d at 1382 ("[W]e do not need to resolve the question as the results of the case are the same under either formulation of the stream of commerce test."); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed.Cir. 1994)("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing.")

As the Court reads them, the facts of this case require this Court to take a position on which Asahi test applies. Regardless of whether any of the moving Defendants have actual knowledge that hard drive devices containing their products are offered for sale in Pennsylvania – and the Court notes that each moving Defendant takes the position that it has no actual knowledge of the same – the moving Defendants do know that their products are incorporated into many Toshiba hard disk drives and could reasonably surmise, based on the breadth of Toshiba's distribution network, that products containing the moving Defendants' component

8

parts are offered for sale in Pennsylvania. This would seem to satisfy the Brennan foreseeability test[2].

However, the Court finds not only that the O'Connor test controls but also that it best comports with the principles of due process, fair play and substantial justice. A defendant must do more than simply place a product into the stream of commerce. Some purposeful act directed at the forum state is required. See J. McIntyre Mach. Ltd., v. Nicastro, 564 U.S. 873, 880 -85 (Kennedy, J.) (concluding in a plurality opinion that "purposeful availment" in the form of "target[ing] the forum" is required under the stream of commerce theory); id. at 890-91 (Breyer, J., concurring) (rejecting the idea that "a producer is subject to jurisdiction ... so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states"); Asahi, 480 U.S. at 111–12 (O'Connor, J.) (requiring "something more than that the defendant was aware of its product's entry into the forum State through the stream of commerce"); see also Jennings v. AC Hydraulic A/S, 383 F.3d 546, 550 n. 2 (7th Cir.2004) (noting that Asahi "left open the question

---

[2] See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1321–22 (Fed. Cir. 2005) ("The evidence on the established distribution channels presented by [Plaintiff] suggests that the flow of [Defendant's] products to Delaware is 'regular and anticipated,' and more than 'unpredictable currents or eddies,' thus likely satisfying Justice Brennan's version of the stream of commerce theory. "); DSM Desotech, Inc. v. Momentive Specialty Chemicals, Inc., No. 2:15-CV-70, 2015 WL 7450893, at *9 (S.D. Ohio Nov. 24, 2015), report and recommendation adopted, No. 2:15-CV-70, 2015 WL 8773473 (S.D. Ohio Dec. 14, 2015) ("[Defendant's] representation that all of its sales of its products […] 'were made to an entity in China,' […] does not, as [Defendant] suggests, defeat personal jurisdiction under a stream-of-commerce theory.); Kingsmill v. Roundo AB, No. CIV. 12-3524, 2013 WL 3778351, at *6 (E.D. Pa. July 18, 2013) ("[U]nder Justice Brennan's standard, although the stream of commerce does not consist of unpredictable currents or eddies as long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.") (internal citations and quotations omitted); Renner v. Roundo AB, No. 1:08-CV-209, 2010 WL 3906242, at *9 (W.D. Pa. Sept. 29, 2010) ("Justice Brennan's theory would find the necessary minimum contacts whenever there is a 'regular and anticipated flow of products from manufacture to distribution to retail sale'");

whether a plaintiff making a stream-of-commerce argument needs to make an additional showing that the defendant purposefully directed its business activities at the forum state"); see also World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 296 (1980) ("[W]e are unwilling to endorse a[ ] principle that amenability to suit would travel with the chattel."); accord Davlyn Manufacturing Co., Inc., v. H&M Auto Parts, Inc., 414 F.Supp.2d 523, 531 (E.D.Pa. 2005) (applying Federal Circuit law to analyze personal jurisdiction and concluding that the O'Connor test holds and that "there must be some additional evidence of the defendant's purpose and intent to serve the forum state, such as state-specific marketing or design, the provision of customer support services, or an exclusive contractual relationship with a distributor in the forum state.").

Accordingly, the Court declines to exercise personal jurisdiction over the moving Defendants on the theory that they placed their products into the stream-of-commerce. Plaintiff has failed to make a prima facie showing that jurisdiction would be proper. The Court's exercise of jurisdiction would be based on the mere foreseeability that the moving Defendants' hard drive disk components would be offered for sale in Pennsylvania as part of finished products they had no role in distributing. This is insufficient to comport with the requirements of due process. The individual components manufactured by the moving Defendants are not available or offered for sale in Pennsylvania. None of the moving Defendants advertise in Pennsylvania. Even relying on what the Court views as Plaintiff's strongest fact – that Headway collaborates with Toshiba to design Headway components specifically for Toshiba hard disk drives – the Court cannot reach the conclusion that Headway has taken any affirmative steps to direct its products toward Pennsylvania. The most affirmative action Headway has taken was to distribute its products to TDK, SAE and/or Toshiba in Asia. There is simply no way for the Court to reach a conclusion that Headway – or TDK or SAE – has any control over the marketing or distribution scheme

employed by Toshiba for its hard disk drives. The moving Defendants have not targeted the forum state for distribution of their products.

Moreover, the Court finds that the moving Defendants relationship with the Carnegie Mellon University's Data Storage Systems Center (the "DSSC") insufficient to confer personal jurisdiction. Plaintiff's contention, that because the moving Defendants fund research at the DSSC and have hired former Carnegie Mellon DSSC employees this creates the kind of contact with the forum state required by due process, misunderstands the tenets of personal jurisdiction. The type of relationship the moving Defendants have with Carnegie Mellon's DSSC is inadequate to confer general jurisdiction – as it is too attenuated – and fails to meet both the reasonableness requirement of the Court of Appeals for the Federal Circuit's specific jurisdiction and the requirement that the infringement claim arise out of or relate to the defendant's activities with the forum state. That the subject matter of the research being conducted at the Carnegie Mellon DSSC overlaps with the subject matter of the suit would not make this Court's exercise of personal jurisdiction over the moving Defendants proper.

Plaintiff also argues that TDK and SAE should be subject to personal jurisdiction under the Federal long-arm statute. (Doc. 149 at 28). The Court disagrees. As Plaintiff explains:

> Federal long-arm jurisdiction exists when (1) the plaintiff's claim arises out of federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with Due Process. Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip Medico, 563 F.3d 1285, 1294 (Fed.Cir. 2009).
>
> A claim for patent infringement arises out of federal law. 28 U.S.C. § 1338(a). Regarding the second prong, in order to defeat Rule 4(k)(2) jurisdiction, the defendant must "name some other state in which the suit could proceed." Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1415 (Fed. Cir. 2009) (quotations omitted).

<u>Id.</u>  TDK and SAE represent that both entities would be amenable to suit in California, where Headway is located.  (Doc. 153 at 6).  Thus, this Court exercising jurisdiction pursuant to the Federal long-arm statute would be improper.

## II. <u>ORDER</u>

For the reasons stated above, Defendants Headway Technologies, Inc., SAE Magnetics H.K. Ltd. and TDK Corporation's Motions to Dismiss (**Docs. 103 and 127**) are **GRANTED**.  Accordingly, all claims against Defendants Headway Technologies, Inc., SAE Magnetics H.K. Ltd. and TDK Corporation are **DISMISSED WITH PREJUDICE**.


IT IS SO ORDERED.


March 1, 2017                                             <u>s/Cathy Bissoon                    </u>
                                                          Cathy Bissoon
                                                          United States District Judge

cc (via ECF email notification):

All Counsel of Record